# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRIAN C. SHERMER**, | Case No. 3:12-cv-01932-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | |
| Defendant. | |

Steven Munson, 610 S.W. Broadway, Suite 405, Portland, OR 97205. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Courtney Garcia, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Brian C. Shermer seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the following reasons, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Application

Mr. Shermer protectively filed an application for DIB on July 21, 2008, and for SSI on July 23, 2008. AR 168, 171. In both applications, he alleged disability beginning on January 15, 2006. Mr. Shermer was born on April 11, 1966; he was 39 on the alleged disability onset date. AR 168.

PAGE 2 – OPINION AND ORDER

Mr. Shermer alleges disability due to a herniated disc and degenerative arthritis. AR 183. The Commissioner denied Mr. Shermer's application initially and upon reconsideration; thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). AR 109, 115, 121, 125, 128. After an administrative hearing held on February 4, 2011, the ALJ ruled that Mr. Shermer is not disabled. AR 27-35. The Appeals Council denied Mr. Shermer's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Mr. Shermer now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c),; 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Mr. Shermer meets the insured status for DIB benefits through March 31, 2009. AR 29. The ALJ then performed the sequential analysis. AR 27-30. At step one, the ALJ found that Mr. Shermer may have engaged in substantial gainful activity since his alleged onset date of January 15, 2006, but because the income was unreported and Mr. Shermer did not provide sufficient information, the ALJ could not conclusively determine whether the work was performed at a level indicating substantial gainful activity. AR 29. The ALJ noted, however, that this work bore on Mr. Shermer's credibility. *Id.* At step two, the ALJ concluded that Mr. Shermer's lumbar spine degenerative disc disease was a severe impairment. *Id.* At step three, the ALJ ruled that Mr. Shermer did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. *Id.*

The ALJ next assessed Mr. Shermer's RFC. The ALJ found that Mr. Shermer retained the capacity to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). AR 30. At step four, the ALJ determined that considering Mr. Shermer's RFC, he could perform his past relevant work as a gas engine repairperson and tow truck driver. AR 34.

In determining the RFC, the ALJ found Mr. Shermer to be "far less than forthright" and that Mr. Shermer's "subjective reporting is far less than credible." AR 31-32. The ALJ

concluded that Mr. Shermer's testimony regarding his symptoms and limitations "represent an intentional desire to mislead in attempt to garner disability benefits." AR 32.

As an alternative to the step four determination that Mr. Shermer could perform his past relevant work, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Mr. Shermer can also perform. AR 34. As a further alternative, the ALJ concluded that, based on the testimony of a vocational expert ("VE"), even if Mr. Shermer was "limited to light work with frequent postural limitations," he could perform jobs that existed in significant numbers in the national economy. AR 35. Thus, the ALJ ruled that Mr. Shermer is not disabled. AR 35.

## DISCUSSION

Mr. Shermer argues that the ALJ erred by: (1) not offering clear and convincing evidence for discrediting his subjective symptom testimony; and (2) improperly formulating an RFC that did not properly assess Mr. Shermer's ability to perform activities in an ordinary work setting on a regular and continuing basis, as required by Social Security Ruling ("SSR") 96-8P.

### A.  Mr. Shermer's Credibility

Mr. Shermer argues that the ALJ erred by discrediting Plaintiff's symptom testimony and testimony regarding his limitations. Pl.'s Brief, ECF 13 at 6-9. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted)). When doing so, the claimant "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it

could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Mr. Shermer asserts that his degenerative disc disease causes severe limitations, including that: (1) on most mornings he cannot walk or stand upright; (2) he cannot sit for more than 15 minutes and can never stand straight; (3) he sometimes falls down when he attempts to stand; (4) he struggles to dress himself; (5) he cannot lift more than 10 pounds; (6) he cannot bend or twist; and (7) he is essentially paralyzed from the waist down for one or two days per month. AR 63-64, 183. The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms[.]" AR 32. In applying the second step, however, the ALJ concluded that Mr. Shermer's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.*

In support of his credibility finding, the ALJ offered several specific reasons: (1) there are multiple inconsistent statements made by Mr. Shermer throughout the record that undermine his credibility; (2) Mr. Shermer engaged in work activity after the alleged disability onset date; (3) Mr. Shermer's activities of daily living are inconsistent with his reported limitations; (4) Mr. Shermer pursued only limited, conservative treatment; and (5) there is a disparity

between Mr. Shermer's subjective symptom testimony and the medical evidence in the record. AR 31-33. All of these reasons are supported by substantial evidence in the record and provide independent bases for upholding the ALJ's credibility determination.

### 1. Inconsistent statements

The ALJ identified numerous inconsistent statements made by Mr. Shermer throughout the record as bearing on Mr. Shermer's overall credibility. These statements include: (1) Mr. Shermer asserted that his driver's license was revoked because he owed child support and then later admitted his license was revoked as a result of Mr. Shermer being arrested for driving under the influence ("DUI") (AR 31, 51-52); (2) Mr. Shermer stated he received an honorable discharge from the Coast Guard because he was going through a divorce and later admitted he had received an administrative discharge because he had THC in his system (AR 31, 54-55); (3) Mr. Shermer stated that he was fired from a job for taking four days off work to attend a custody hearing and later admitted that, instead, had taken a four-day weekend for the Fourth of July holiday, which was after the custody hearing, and that is what had resulted in his termination (AR 31, 59-60); and (4) Mr. Shermer claimed he stopped drinking on July 29, 2009, after his DUI, but his mother testified that he continues to drink. Additionally, Mr. Shermer went to the emergency room in August 2009, after his DUI, and his blood alcohol level was .297. Although Mr. Shermer told the treating medical personnel at the hospital that he had been drinking alcohol, Mr. Shermer testified at the hearing that his blood alcohol level on that day was the result of taking Nyquil (AR 32, 73-74, 82-83, 89, 286-88).

Mr. Shermer argues that the inconsistent statements relied upon by the ALJ did not relate to Mr. Shermer's symptoms and are therefore irrelevant. This argument is without merit. An ALJ may use "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. This includes both "prior statements inconsistent with [a] claim of pain" and a finding that a claimant "[has]

been less than candid in other aspects of his testimony." *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may consider ordinary techniques of evaluating credibility, including "the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony"). There is substantial evidence in the record supporting the ALJ's conclusion that Mr. Shermer was less than candid in several aspects of his testimony. The ALJ's reliance on Mr. Shermer's inconsistent statements was a clear and convincing reason to find him not credible with regard to his symptom testimony.

## 2.  Work activity after the alleged onset date

The ALJ also discredited Mr. Shermer's testimony regarding his limitations because he engaged in work activity after the alleged onset date of his disability. Mr. Shermer admitted that after the alleged disability onset date, he worked for four or five months mowing lawns and performing other landscaping tasks for approximately four to six hours per day, "a couple" of days a week. AR 62. Mr. Shermer worked "under the table" and did not report this income. *Id.* This evidence contradicts Mr. Shermer's claim that he is totally disabled. Additionally, the fact that Mr. Shermer did not report his income bears on his overall credibility. The ALJ properly considered this evidence in finding Mr. Shermer lacked credibility.

## 3.  Activities of daily living

The ALJ also found that the daily living activities performed by Mr. Shermer were inconsistent with his claimed limitations. AR 31. Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v.*

*Astrue*, 2012 WL 3922151 at * 4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, 2012 WL 4210508 at * 6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

On August 13, 2008, Mr. Shermer submitted a Function Report applying for state disability in which he stated that he would "take care of little things" around the house, make his bed, do laundry, perform outside watering, visit a neighbor, set the table, help with dinner, cook all his meals, grocery shop for an hour, perform household repairs, watch television at a friend's house for hours, mow the lawn, drive a car, and go outside a few times a day. AR 199-206. Mr. Shermer also testified that he walked approximately one mile in a typical day and sometimes walks more than one mile. AR 70-71. At that time, Mr. Shermer reported his limitations as either not being able to walk at all or being able to walk for no more than 200 yards before requiring a five minute rest, not being able to stand at all, and not being able to sit for longer than 15 minutes. AR 183, 204.

The written records of daily living are in conflict with Mr. Shermer's testimony that he is totally disabled and unable to walk, stand, or sit. Further, the daily activities reported by Mr. Shermer of cooking for a few hours each day, shopping, cleaning, mowing the lawn, and other regular activities, even if they do not rise to the level of transferable work skills, are

inconsistent with a completely debilitating impairment. *Molina*, 674 F.3d at 1113. Therefore, the ALJ's reliance on Mr. Shermer's activities of daily living was a clear and convincing reason to find him not credible with regard to his symptoms.

### 4. **Conservative treatment**

The ALJ also considered the conservative course of treatment in rejecting Mr. Shermer's credibility. Conservative treatment can be considered when evaluating credibility regarding allegations of debilitating pain. *Burch*, 400 F.3d at 681 (ALJ properly considered claimant's conservative treatment in discounting the credibility of claimant's pain testimony); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly considered absence of medical treatment for allegedly debilitating back pain and doctor's prescription of conservative treatment in discounting the credibility of claimant's pain testimony). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's credibility. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.2008).

There is substantial evidence in the record of Mr. Shermer's conservative treatment for his alleged impairments. Despite Mr. Shermer's allegedly nearly paralyzing physical condition, he has not undergone medical treatment for his back pain after approximately April 2006. Additionally, he takes only over-the-counter ibuprofen to treat his allegedly debilitating pain, which he has stated helps his symptoms. AR 207-08, 224, 233. This type of conservative treatment "is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Burch*, 400 F.3d at 681 ("That Burch's pain was not severe enough to motivate her to seek [more aggressive] forms of treatment, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain.") (quotation marks and citation omitted).

### 5.  Inconsistency with medical records

The ALJ also found Mr. Shermer's subjective testimony regarding his symptoms not credible because it contradicted the medical evidence in the record. AR 33. A claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider when making a credibility assessment. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

Mr. Shermer testified to severe and debilitating symptoms from his back pain, but he did not report such symptoms to medical personnel. He testified that he reported the fact that he is essentially paralyzed from the waist down a few times a month to Dr. Fritz Foulke, but the medical records do not show that Mr. Shermer reported this type of limitation to Dr. Foulke or any other medical practitioner. To the contrary, the medical evidence contradicts Mr. Shermer's claims of severe and ongoing pain. Mr. Shermer sought treatment for only a few months after his alleged disability onset date. AR 246-262. In February and March 2006, Mr Shermer saw Dr. Foulke a few times. In February 2006, Dr. Foulke advised Mr. Shermer to maintain light activity and avoid heavy lifting and bending. AR 262. In March 2006, Dr. Foulke prescribed an MRI and requested Mr. Shermer follow-up after the MRI. It does not appear that Mr. Shermer followed up with Dr. Foulke after March 2006.

On April 10, 2006, approximately three months after Mr. Shermer's alleged disability onset date, Mr. Shermer visited Dr. Robert Buza for an evaluation. Mr. Shermer reported to Dr. Buza that Mr. Shermer was "much better," was "at least 50 percent better," wanted to continue with conservative treatment and would follow up if needed. AR 258-59. It does not appear that Mr. Shermer followed up with Dr. Buza.

After April 2006, there is no evidence that Mr. Shermer sought treatment for his back pain. In September 2008, he attended a consultative exam with Dr. Terri Robinson. Dr. Robinson

noted Mr. Shermer was in no acute distress, emotionally stable, able to transfer from the chair to the examination table, able to sit comfortably, and able to remove his shoes without difficulty. AR 264. Dr. Robinson found "no paravertebral muscle spasms, tenderness, crepitus, effusions, deformities, or trigger points elicited." AR 266. Dr. Robinson concluded that Mr. Shermer had no limitations. AR 267.

In August 2009, when Mr. Shermer was seen in the emergency room for alcohol intoxication and transient suicidal ideation, he complained of his mental health issues but stated he had no other complaints. AR 285. He reported to medical personnel that he was distressed because his father had passed away the previous year and he was not getting along with his mother. AR 287. It does not appear that that Mr. Shermer complained of severe or debilitating pain as having any effect on his distressed state.

There is substantial evidence in the record to support the ALJ's reliance on the inconsistent medical reports and lack of reporting when evaluating Mr. Shermer's credibility.

### 6.  Conclusion

The ALJ offered five clear and convincing reasons supported by substantial evidence in finding that Mr. Shermer's testimony regarding his symptoms was not credible. Thus, the Court affirms the ALJ's credibility finding.

## B.  The ALJ's RFC Formulation

Mr. Shermer also argues that in formulating his RFC, the ALJ failed to follow SSR 96-8p, which "require[s]" that the ALJ "assess a claimant's abilities on a sustained basis." Pl.'s Br., ECF 13 at 10. SSR 96-8p is a policy interpretation that explains that the RFC assessment ordinarily considers "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p(1),

*available at* 1996 WL 374184. SSRs are binding on the Social Security Administration, but do not have the force of law and are not binding on courts. *See Holohan v. Massanari*, 246 F.3d 1199, 1202 n.1 (9th Cir. 2001). They are, however, entitled to some deference because they represent the Commissioner's interpretation of the agency's regulations. *Id.*

SSR 96-8p does not impose any additional requirements on the ALJ—the ALJ is required to assess work-related activities that can be performed on a "regular and continuing basis" under 20 C.F.R. §§ 404.1545(b)-(c) and 416.945(b)-(c). SSR 96-8p provides an interpretation of what "regular and continuing basis" means. It also states that the RFC should be the *most* an individual can do despite limitations and impairments. SSR 96-8p(5). Further, the "RFC assessment considers only functional limitations and restrictions that result from an individual's *medically determinable* impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p(2) (emphasis added); *see also* 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1528(b)-(c).

Mr. Shermer argues that the ALJ failed properly to address Mr. Shermer's ability to undertake sustained work activity because the ALJ did not "mention or address" Mr. Shermer's testimony regarding his concentration and pain issues. Pl's Br., ECF 13 at 10-11. This argument is without merit. The ALJ discussed Mr. Shermer's testimony regarding his alleged concentration problems caused by lack of sleep and severe pain, and the ALJ found Mr. Shermer's testimony to be not credible. AR 31-33. As discussed above, this determination was supported by significant evidence in the record.

The ALJ did not include concentration, pace, or persistence limitations in his RFC or limitations caused by severe pain. The ALJ, however, had not found such symptoms to be medically determinable. Accordingly, he was not obligated to include those symptoms in his

RFC. *See, e.g.*, SSR 96-8p(2). The ALJ does not need to prepare "a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record." *Bowliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ's RFC assessment is consistent with the medical records and with the assessment of the state agency consultative and reviewing physicians. AR 267, 272, 277. State agency reviewing doctors are highly qualified experts in Social Security disability evaluations. 20 C.F.R. § 404.1527(e)(2)(i). The Court finds the ALJ properly weighed the evidence, gave sufficient justification for his findings regarding Mr. Shermer's functional abilities, and there is substantial evidence in the record supporting the ALJ's conclusions.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Mr. Shermer is not disabled.

**IT IS SO ORDERED**.

DATED this 29th day of April 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge